**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**

1285 AVENUE OF THE AMERICAS
NEW YORK, NEW YORK 10019-6064

TELEPHONE (212) 373-3000

LLOYD K. GARRISON (1946-1991)
RANDOLPH E. PAUL (1946-1956)
SIMON H. RIFKIND (1950-1995)
LOUIS S. WEISS (1927-1950)
JOHN F. WHARTON (1927-1977)

WRITER'S DIRECT DIAL NUMBER

(212) 373-3203

WRITER'S DIRECT FACSIMILE

(212) 492-0203

WRITER'S DIRECT E-MAIL ADDRESS

aarffa@paulweiss.com

UNIT 5201, FORTUNE FINANCIAL CENTER
5 DONGSANHUAN ZHONGLU
CHAOYANG DISTRICT, BEIJING 100020, CHINA
TELEPHONE (86-10) 5828-6300

HONG KONG CLUB BUILDING, 12TH FLOOR
3A CHATER ROAD, CENTRAL
HONG KONG
TELEPHONE (852) 2846-0300

ALDER CASTLE
10 NOBLE STREET
LONDON EC2V 7JU, UNITED KINGDOM
TELEPHONE (44 20) 7367 1600

FUKOKU SEIMEI BUILDING
2-2 UCHISAIWAICHO 2-CHOME
CHIYODA-KU, TOKYO 100-0011, JAPAN
TELEPHONE (81-3) 3597-8101

TORONTO-DOMINION CENTRE
77 KING STREET WEST, SUITE 3100
P.O. BOX 226
TORONTO, ONTARIO M5K 1J3
TELEPHONE (416) 504-0520

2001 K STREET, NW
WASHINGTON, DC 20006-1047
TELEPHONE (202) 223-7300

500 DELAWARE AVENUE, SUITE 200
POST OFFICE BOX 32
WILMINGTON, DE 19899-0032
TELEPHONE (302) 655-4410

MATTHEW W. ABBOTT
EDWARD T. ACKERMAN
JACOB A. ADLERSTEIN
JUSTIN ANDERSON
ALLAN J. ARFFA
ROBERT A. ATKINS
DAVID J. BALL
SCOTT A. BARSHAY
PAUL M. BASTA
JOHN F. BAUGHMAN
J. STEVEN BAUGHMAN
LYNN B. BAYARD
CRAIG A. BENSON
MITCHELL L. BERG
MARK S. BERGMAN
DAVID M. BERNICK
JOSEPH J. BIAL
BRUCE BIRENBOIM
H. CHRISTOPHER BOEHNING
ANGELO BONVINO
ROBERT BRITTON
DAVID W. BROWN
SUSANNA M. BUERGEL
JESSICA S. CAREY
DAVID CARMONA
GEOFFREY R. CHEPIGA
ELLEN N. CHING
WILLIAM A. CLAREMAN
LEWIS R. CLAYTON
YAHONNES CLEARY
JAY COHEN
KELLEY A. CORNISH
CHRISTOPHER J. CUMMINGS
THOMAS V. DE LA BASTIDE III
ARIEL J. DECKELBAUM
ALICE BELISLE EATON
ANDREW J. EHRLICH
GREGORY A. EZRING
ROSS A. FIELDSTON
ANDREW C. FINCH
BRAD J. FINKELSTEIN
BRIAN P. FINNEGAN
ROBERTO FINZI
PETER E. FISCH
HARRIS FISCHMAN
MARTIN FLUMENBAUM
ANDREW J. FOLEY
ANDREW J. FORMAN*
HARRIS B. FREIDUS
CHRISTOPHER D. FREY
MANUEL S. FREY
ANDREW L. GAINES
KENNETH A. GALLO
MICHAEL E. GERTZMAN
ADAM M. GIVERTZ
SALVATORE GOGLIORMELLA
NEIL GOLDMAN
MATTHEW B. GOLDSTEIN
ROBERTO J. GONZALEZ*
CATHERINE L. GOODALL
ERIC GOODISON
CHARLES H. GOOGE, JR.
ANDREW G. GORDON
BRIAN S. GRIEVE
UDI GROFMAN
NICHOLAS GROOMBRIDGE
BRUCE A. GUTENPLAN
ALAN S. HALPERIN
CLAUDIA HAMMERMAN
BRIAN S. HERMANN
MICHELE HIRSHMAN
DAVID S. HUNTINGTON
AMRAN HUSSEIN
LORETTA A. IPPOLITO
JAREN JANGHORBANI
BRIAN M. JANSON
JEH C. JOHNSON
MEREDITH J. KANE
JONATHAN S. KANTER
BRAD S. KARP

PATRICK N. KARSNITZ
JOHN C. KENNEDY
BRIAN KIM
KYLE J. KIMPLER
ALAN W. KORNBERG
DANIEL J. KRAMER
DAVID K. LAKHDHIR
JOHN E. LANGE
GREGORY F. LAUFER
BRIAN C. LAVIN
XIAOYU GREG LIU
LORETTA E. LYNCH
JEFFREY D. MARELL
MARCO V. MASOTTI
DAVID W. MAYO
ELIZABETH R. MCCOLM
JEAN M. MCLOUGHLIN
ALVARO MEMBRILLERA
MARK F. MENDELSOHN
CLAUDINE MEREDITH-GOUJON
WILLIAM B. MICHAEL
JUDIE NG SHORTELL*
CATHERINE NYARADY
JANE B. O'BRIEN
ALEX YOUNG K. OH
BRAD R. OKUN
KELLEY D. PARKER
LINDSAY B. PARKS
VALERIE E. RADWANER
JEFFREY J. RECHER
CARL L. REISNER
LORIN L. REISNER
JEANNIE S. RHEE*
WALTER G. RICCIARDI
WALTER RIEMAN
RICHARD A. ROSEN
ANDREW N. ROSENBERG
JUSTIN ROSENBERG
JACQUELINE P. RUBIN
CHARLES F. "RICK" RULE*
RAPHAEL M. RUSSO
ELIZABETH M. SACKSTEDER
JEFFREY D. SAFERSTEIN
JEFFREY B. SAMUELS
TERRY E. SCHIMEK
KENNETH M. SCHNEIDER
ROBERT B. SCHUMER
JOHN M. SCOTT
BRIAN SCRIVANI
KANNON K. SHANMUGAM*
DAVID R. SICULAR
AUDRA J. SOLOWAY
SCOTT M. SONTAG
SARAH STASNY
TARUN M. STEWART
ERIC ALAN STONE
AIDAN SYNNOTT
RICHARD C. TARLOWE
MONICA K. THURMOND
DANIEL J. TOAL
LAURA C. TURANO
CONRAD VAN LOGGERENBERG
LIZA M. VELAZQUEZ
MICHAEL VOGEL
RAMY J. WAHBEH
LAWRENCE G. WEE
THEODORE V. WELLS, JR.
LINDSEY L. WIERSMA
STEVEN J. WILLIAMS
LAWRENCE I. WITDORCHIC
MARK B. WLAZLO
JULIA TARVER MASON WOOD
JENNIFER H. WU
BETTY YAP*
JORDAN E. YARETT
KAYE N. YOSHINO
TONG YU
TRACEY A. ZACCONE
TAURIE M. ZEITZER
T. ROBERT ZOCHOWSKI, JR.

*NOT ADMITTED TO THE NEW YORK BAR

December 3, 2020

**By ECF**

The Honorable Edgardo Ramos
United States District Judge
United States District Court
Southern District of New York
40 Foley Square
New York, NY 10007

Re: *Forsee, et al.* v. *Metro. Transp. Auth., et al.*
No. 19-cv-04406

Dear Judge Ramos:    **MEMO ENDORSED**    at page 4.

We represent defendants the Metropolitan Transportation Authority (the "MTA"), Patrick Foye (in his official capacity), New York City Transit Authority (the "NYCTA"), and Andy Byford (in his official capacity) (collectively, the "Transit Defendants") in the above action. Pursuant to Your Honor's Individual Practices, we respectfully write to seek a stay of further proceedings in this matter or, in the alternative, a pre-motion conference and permission to seek such a stay, pending Your Honor's ruling on the two summary judgment motions before the Court in the related action captioned *Bronx Independent Living Services* v. *Metropolitan Transportation Authority*, No. 16-cv-05023 ("*Middletown Road*").

**Relevant Background**.  The operative complaint in this matter asserts a claim under Title II of the Americans with Disabilities Act (the "ADA") as well as related claims under Section 504 of the Rehabilitation Act of 1973 and the New York City Human Rights Law. As now modified by the Court's decision on the Transit Defendants' motion for judgment on the pleadings on statute of limitations grounds, plaintiffs—a putative class of disabled subway users—in essence allege that the Transit Defendants should have installed elevators at any subway station that underwent renovations during the three-year period preceding the initiation of this matter.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

The Honorable Edgardo Ramos                                                                                                  2

**The Related *Middletown Road* Action**.  *Middletown Road* was filed in this Court in June of 2016 by many of the same plaintiffs who are named plaintiffs here—and are represented by the same counsel as here—against the same Transit Defendants as here.  Both lawsuits assert identical claims against the Transit Defendants.  The only difference between them is their scope.  In *Middletown Road*, the plaintiffs are challenging the Transit Defendants' failure to include one or more elevators as part of the renovations made at one subway station:  the Middletown Road station in the Bronx.  Here, plaintiffs are challenging the failure to include elevators as part of every one of the more than 150 subway station renovations that has occurred over a three-year period prior to the commencement of the action.

The *Middletown Road* parties recently filed dueling summary judgment motions in that action that address two issues of potentially great importance to this action.  Specifically:

*First*, the *Middletown Road* motions present the critical issue of the circumstances under which cost is considered when analyzing claims under Title II of the ADA as to "alterations" to transportation facilities.  In *Middletown Road*, plaintiffs assert (as they do here) that the renovations at issue there are governed by 49 C.F.R. § 37.43(a)(1), which does not expressly provide for costs to be considered when analyzing an "alteration."  In their view, each time the Transit Defendants replace a subway station stairway, they must install an elevator in that station regardless of cost and regardless of the nature and scope of the renovation.

In contrast, the Transit Defendants contend, among other things, that the renovations at issue in *Middletown Road* are governed by 49 C.F.R. § 37.43(a)(2), which expressly takes cost into account when analyzing alterations that affect the usability of a transportation facility area containing a "primary function."  The Transit Defendants argue that the renovations at issue in that case included an area that contained "primary functions," triggering § (a)(2), and hence that costs should be considered in analyzing the renovations in that case.

In an earlier ruling, the Court held that the *Middletown Road* renovations implicated *both* §§ (a)(1) and (a)(2).  Accordingly, on the pending summary judgment motions in that case, the parties have now presented for the Court's determination the issue of what that initial ruling means in terms of how and when costs may be considered with respect to subway station renovations that implicate both categories of alterations.

*Second*, the *Middletown Road* motions also raise important questions, even if § (a)(1) applies, about what it means to make accessibility improvements "to the maximum extent feasible," as required by the ADA.  In *Middletown Road*, plaintiffs describe that standard as an "impossibility" standard.  In other words, they argue that so long as it is remotely "possible" to install an elevator at a station, one *must* be installed, no matter how difficult to do so.  The Transit Defendants, on the other hand, contend, based on the language in certain ADA-implementing regulations, that the feasibility analysis asks whether there are existing structural conditions that would require, for any accessibility improvements, removing or altering a load-bearing member that would not otherwise be removed or altered in the alteration at issue and that is an essential part of the structural frame.  49 C.F.R. Part 37, App'x D; 36 C.F.R. § Pt. 1191, App. B (ADAAG).

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

The Honorable Edgardo Ramos                                                                                        3

If that is the case, they argue, elevators were not required to be installed during the Middletown Road renovations.

Both of these issues are central to this litigation. Indeed, there is uncertainty right now as to what standards need to be applied in litigating this action. As to each renovation, should costs be considered? And what standard of "feasibility" should be used? While the Transit Defendants believe the applicable standards are those they are arguing for in *Middletown Road*, it is as yet not clear to the Transit Defendants (and their experts) what standards will be applied here.

**Standards for Granting a Stay**. A District Court's power to stay cases is discretionary and "incidental to the power inherent in every court to control the disposition of the [cases] on its docket with economy of time and effort for itself, for counsel, and for litigants." *Louis Vuitton Malletier S.A.* v. *LY USA, Inc.*, 676 F.3d 83, 96 (2d Cir. 2012) (internal quotations and citation omitted); *GOJO Indus., Inc.* v. *Innovative Biodefense, Inc.*, 407 F. Supp. 3d 356, 361 (S.D.N.Y. 2019) (reciting same).

Courts generally take into account the following to determine if a stay is appropriate: "(1) the private interests of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiffs if delayed; (2) the private interests of and burden on the defendants; (3) the interests of the courts; (4) the interest of persons not parties to the civil litigation; and (5) the public interest." *Loftus* v. *Signpost, Inc.*, 464 F. Supp. 3d 524, 526 (S.D.N.Y. 2020) (citation omitted). Courts routinely "stay a federal action in light of a concurrently pending federal action (either because the claim arises from the same nucleus of facts or because the pending action would resolve a controlling point of law)." *SST Global Tech., LLC* v. *Chapman*, 270 F. Supp. 2d 444, 445 (S.D.N.Y. 2003).

**A Stay Is Warranted Here Under Governing Standards**. All of these considerations clearly favor staying the present matter until the motions for summary judgment in *Middletown Road* are resolved.

A stay would benefit both parties by ensuring they do not litigate key issues under the wrong standards, and would thus save both parties from wasting time and money pursuing voluminous, expensive, and burdensome discovery on issues that may turn out to be irrelevant in the action. A stay also would save judicial resources by obviating the need for the Court to rule on the same issues months from now and from having an active case on its docket that, depending on what happens in *Middletown Road*, could have a much shorter (or longer) timeline. Third parties that could be called on to provide discovery but may not have to depending on what happens in *Middletown Road* would also benefit from a stay. And, finally, the public interest would surely be served by a stay. The MTA and the NYCTA are public authorities that depend on public funding and that are now in an unprecedented and perilous public health and financial crisis. The public interest is not served by having them spend money litigating issues under what may turn out to be incorrect standards.

\* \* \*

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

The Honorable Edgardo Ramos                                                                                               4

        Although we believe the Court could rule on this request based on letter submissions and, if appropriate, argument, the Transit Defendants are also prepared to brief the issue more fully, and thus request that, if Your Honor prefers, the Court hold a pre-motion conference to discuss this matter and, if necessary, authorize the Transit Defendants to file a motion seeking a stay of this action pending resolution of the *Middletown Road* summary judgment motions.

        Finally, we note that plaintiffs refused to agree to our request that they consent to such a stay of proceedings.

Respectfully submitted,

*/s/ Allan J. Arffa*
Allan J. Arffa

cc:    Torie Atkinson, Esq., Attorney for Plaintiffs
       Daniel Brown, Esq., Attorney for Plaintiffs
       Martin Bowe, Esq., Attorney for City of New York

---

Plaintiffs are directed to respond to the arguments in Defendants' letter, Doc. 116, by letter of no more than 3 pages by **December 9, 2020**.

It is SO ORDERED.

_____
Edgardo Ramos, U.S.D.J
Dated: 12/4/2020
New York, New York