UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JESSICA DE LA ROSA, JEAN RYAN, BRONX INDEPENDENT LIVING SERVICES, BROOKLYN CENTER FOR INDEPENDENCE OF THE DISABLED, CENTER FOR INDEPENDENCE OF THE DISABLED, NEW YORK, DISABLED IN ACTION OF METROPOLITAN NEW YORK, HARLEM INDEPENDENT LIVING CENTER, on behalf of themselves and all others similarly situated,<br><br>      Plaintiffs,<br><br>      v.<br><br>METROPOLITAN TRANSPORTATION AUTHORITY, PATRICK FOYE, in his official capacity as chair and chief executive officer of the Metropolitan Transportation Authority, NEW YORK CITY TRANSIT AUTHORITY, SARAH FEINBERG, in her official capacity as acting President of the New York City Transit Authority, and the CITY OF NEW YORK,<br><br>      Defendants. | Case No. 19-cv-04406 (ER) |

**<u>DECLARATION OF DAVID I. FARBER</u>**

I, DAVID I. FARBER, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct.

1. I am an attorney admitted to practice in New York and am employed as General Counsel of the New York City Transit Authority (the "NYCTA"). I, along with outside counsel, represent the NYCTA in an Article 78 proceeding, *In the Matter of the Application of Espaillat et al against New York City Transit Authority*, Index No. 157036/2023, now pending in the Supreme Court of the State of New York, County of New York (the "Article 78 Proceeding" or "Proceeding"). NYCTA's outside counsel in the Article 78 Proceeding also represents the Metropolitan Transportation Authority (the "MTA") in the Proceeding. The Article 78 Proceeding was brought by numerous parties, including individuals purporting to represent a class of persons with mobility disabilities (collectively, the "Petitioners"). I respectfully submit this declaration in support of the Order to Show Cause and Request for a Temporary Restraining Order filed by the MTA, NYCTA, and certain individual Defendants in their official capacity in this action (collectively, the "Transit Defendants").

2. On July 13, 2023, Petitioners filed the Article 78 Proceeding in New York State Court. (Attached as **Exhibit 1** is a true and correct copy of the Petition filed in the Article 78 Proceeding (the "Petition") (NYSCEF No. 1).) In that Proceeding, Petitioners challenge, among other things, the NYCTA's reallocation of the duties assigned to 27 employees who currently perform work as elevator attendants in four New York City subway stations. Specifically, Petitioners seek to enjoin the removal of these 27 individuals from their duties attending, together, four elevators, and their reassignment to other restricted duty assignments.

3. As detailed in their Article 78 Petition, Petitioners claim that the removal of elevator attendants from these four elevators amounts to a "complete or partial closing" of "any means of public access" to the subway system. (Petition ¶¶ 45–46.)

4. In the Third Cause of Action asserted in the Petition, Petitioners allege that the NYCTA's removal of elevator attendants violates the New York City Human Rights Law ("NYCHRL") by failing to provide a "reasonable accommodation[] to allow persons with disabilities the opportunity to fully use subway elevators" (Petition ¶ 55), thereby denying Petitioners "the accommodations, advantages, facilities, or privileges of the subway program as a whole" (Petition ¶ 66).

**Prior Events in the Article 78 Proceeding and Upcoming Hearing**

5. At a hearing on July 26, 2023 in the Article 78 Proceeding, for which a true and correct copy of the verified transcript is attached as **Exhibit 2**, the Court (per Justice Machelle Sweeting, J.S.C.) ruled from the bench that the removal of the elevator attendant assignment amounts to a "closing of the means of access to a subway station" and enjoined the MTA from eliminating or removing the elevator attendant assignments without formal notice and a public hearing. (Ex. 2 at 59:10.)

6. After the hearing concluded on July 26, 2023, Petitioners submitted a letter asserting that Justice Sweeting should consider addressing the NYCHRL claims in a forthcoming order. (Attached as **Exhibit 3** is a true and correct copy of Petitioners' July 26 Letter (NYSCEF No. 26).) The NYCTA opposed this request, as the bench ruling did not include a decision on the NYCHRL claims. (Attached as **Exhibit 4** is a true and correct copy of the NYCTA's Objection to Petitioners' July 26 Letter (NYSCEF No. 27).)

7.  On July 27, 2023, Petitioners submitted a Proposed Order that included a finding that the removal of elevator attendants violated the NYCHRL by making the subway station inaccessible to disabled riders—even though that issue (presented by the Third Cause of Action in the Petition) had not been expressly ruled upon at the July 26 hearing. (Attached as **Exhibit 5** is a true and correct copy of Petitioners' Proposed Order (NYSCEF No. 28–29).)

8.  The NYCTA objected to the Proposed Order given that Justice Sweeting had not ruled on the NYCHRL claim and given the potential implications of such a ruling, which could, in effect, require elevator attendants 24 hours a day/7days a week at every publicly accessible elevator in New York City. (Attached as **Exhibit 6** is a true and correct copy of the NYCTA's Objection to Petitioners' Proposed Order (NYSCEF No. 30).)

9.  On August 4, 2023, Justice Sweeting held a conference regarding the NYCTA's objection to the Petitioners' Proposed Order. It is my understanding that a transcript of that conference will not be available until after August 28.

10. At that conference, and in the Interim Order that followed, Justice Sweeting set dates for a hearing, to begin August 30, 2023, at which she will consider and rule on Petitioners' claim that the lack of an elevator attendant constitutes a violation of the NYCHRL with respect to disabled passengers who may have difficulties accessing subway stations without assistance in station elevators. (Attached as **Exhibit 7** is a true and correct copy of the court's Interim Order (NYSCEF No. 34).) Holding this hearing, where the NYCTA will have to defend itself against released claims, poses immediate and irreparable harm to the Transit Defendants.

11.     Any determination that removing elevator attendants violates the NYCHRL could be tantamount to a determination that any elevator in subway stations that lacks an attendant violates the NYCHRL.

12.     On August 24, 2023, counsel for the NYCTA submitted a letter to the State Court requesting that Petitioners' NYCHRL claims be dismissed, or, alternatively, that the Aug. 30 hearing be stayed.  (Attached as **Exhibit 8** is a true and correct copy of the NYCTA's Aug. 24 Letter to Justice Sweeting (NYSCEF No. 45).)

**The Prior Settlement in this Action**

13.     As this Court is aware, in June 2022, the Transit Defendants entered into a historic, comprehensive and heavily-negotiated settlement agreement (the "Settlement Agreement" (ECF No. 159-1)) with a class comprised of "all people whose disabilities make the use of stairs difficult or impossible and who require stair-free paths of travel in the New York City subway system" (Settlement Agreement § 19), settling both this action and a companion State Court action.  Pursuant to the terms of the Settlement Agreement, the Transit Defendants agreed to achieve "maximum accessibility" (as defined in the Settlement Agreement) for the subway system, through the installation of elevators or ramps in most subway stations, subject to the terms and conditions of the Settlement Agreement.  The Settlement Agreement went through the requisite notice and objection process and was approved by this Court on April 7, 2023 (ECF No. 187) and by the State Court in the companion State Court action on April 24, 2023.  (Attached as **Exhibit 9** is a true and correct copy of the Complaint in the State Court action (NYSCEF No. 2).) (Attached as **Exhibit 10** is a true and correct copy of the State Court Order Granting Final Approval of the Class Settlement (NYSCEF No. 281).)

14. Under the Settlement Agreement, Plaintiffs and all Settlement Class members irrevocably and unconditionally released claims and proceedings of any nature that "(a) were asserted in any of the Actions; (b) could have been asserted in any of the Actions and that relate to providing stair-free paths of travel in New York City subway stations; (c) seek as relief, in whole or in part, an order requiring the Defendants to modify any subway station to add an elevator or otherwise provide stair-free paths of travel in New York City subway stations, whether or not due to or as part of any station renovation or other alteration; or (d) otherwise seek any type of equitable, injunctive or declaratory relief requiring Defendants to provide any stair-free paths of travel in New York City subway stations." (Settlement Agreement § 20.)

15. The Settlement Agreement is "subject to continuing jurisdiction of the United States District Court for the Southern District of New York." (Settlement Agreement § 28.) The Court retained jurisdiction over the Settlement Agreement, "including the power to enter orders concerning this Agreement and adjudicate any dispute or controversy between the Parties concerning the interpretation of the terms or enforcement of the Agreement." (*Id.*)

16. The Transit Defendants have begun work to fulfill their obligations under the Settlement Agreement, including, among many other things, by working to meet the deadlines set out under the 2020-2024 Capital Plan. (Settlement Agreement § 7.)

### The Relationship Between the Matters

17. It is my understanding that at least some of the Petitioners in the Article 78 Proceeding, are within the class of plaintiffs whose claims were settled by way of the Settlement Agreement. I am aware that at least one of the Petitioners, Michael

5

Schweinsberg, has stated that he, in fact, participated in the proceedings that resulted in the Settlement Agreement. (Attached as **Exhibit 11** is a true and correct copy of the Reply Affidavit of Petitioner Michael Schweinsberg in which he states that *CIDNY* v. *MTA* (153765/17) was a "case that my organization participated in, which helped win hundreds of new elevators in the NYC subway system," and which "was settled 8 months ago with an agreement to make 95% of all subways accessible by 2055 with elevators." (NYSCEF No. 19) (¶¶ 4-5).)

18.     The Transit Defendants submit that, for the reasons set forth in their accompanying Memorandum of Law, the claim asserted (and relief sought) by the Third Cause of Action in the Article 78 Proceeding are barred by the release provisions of the Settlement Agreement. Further, it should be noted that the logistical and financial implications of requiring elevator attendants in all subway elevators, which appears to be Petitioners' goal, cannot be overstated. It is my understanding that, to the extent staffing attendants at elevators is even possible, it would require significant re-prioritization and re-allocation of MTA and NYCTA funds, incur additional annual costs of more than $140 million for existing elevators and of more than $356 million at the point when the MTA has fully satisfied the obligation to have installed elevators or ramps at 95% of the then inaccessible stations (as more specifically set forth in the Settlement Agreement), and would significantly impact the rights and obligations under the Settlement Agreement. (*See* Ex. 8 at 5.)

I declare under penalty of perjury that the foregoing is true and correct.

New York, New York

Executed on August 25, 2023.

By: _____

David I. Farber