# EXHIBIT F



August 3, 2023

<u>**Via NYSCEF**</u>

Steven D. Hurd
Member of the Firm
d +1.212.969.3985
f 212.969.2900
shurd@proskauer.com
www.proskauer.com

The Honorable J. Machelle Sweeting
New York Supreme Court, New York County
Part 62
80 Centre Street
New York NY 10013

Re: *Espaillat et al v. New York City Transit Authority,* Index No. 157036/2023

Dear Judge Sweeting:

Respondent New York City Transit Authority ("NYCTA") respectfully submits this letter in response to Petitioners' letter dated July 27, 2023 (NYSCEF Doc. No. 28) enclosing a Proposed Order (NYSCEF Doc. No. 29) and in advance of Parties' appearance scheduled for August 4, 2023. As set forth below, Respondent objects to the Proposed Order in as much as it concerns the claims brought pursuant to the New York City Human Rights Law ("NYCHRL") §8-107 and respectfully requests to be heard on its objection.[1]

In the Court's decision from the bench on July 26, 2023, Your Honor expressly limited your findings and order to the "preliminary or threshold" (Tr. 49:19)[2] claim under the Public Authorities Law ("PAL"). Specifically, the Court stated the question of law addressed in its decision was:

> [N]arrowly confined to the issue of whether the elimination of elevator attendants or the reassignment of persons currently employed in that position results in a reduction of service or access to riders, specifically at the 168th Street, 181st Street, 190th and 191st Street stations, and if so, whether or not it triggers the Public Authorities Law which requires public notice and a public hearing be held.

(Tr. 52:4-12.)

The Court found that:

[E]limination of the [E]levator [A]ttendant position does amount to a closing, a closing of the means of access to a subway station, by means of not having access and use of the elevator. Therefore, [Public Authorities Law] is triggered.

---

[1] Respondent respectfully disagrees with the Court's decision and order on the Public Authorities Law claims issued from the bench on July 26, 2023 and expressly reserves its rights to appeal those finding following entry of the Court's Order.

[2] The transcript of the July 26, 2023 proceeding is attached as Exhibit A.

Proskauer>>

The Honorable Machelle Sweeting
August 3, 2023
Page 2

(Tr. 59:8-12.)

    The Court ordered that Respondent is:

> [E]njoined from eliminating or removing the [E]levator [A]ttendants who are presently operating the elevators at the subject stations, and that pursuant to Public Authorities Law, [R]espondent much give formal notice to the community boards that are the subject or in the area that is applicable here, and the hearings must be held pursuant to such law within the statutory period.

(Tr. 59:13-21.)

    Respondent respectfully disagrees with the Court's findings concerning the PAL claims. However, the Court's limitation of its order to the PAL claims only, and not the NYCHRL claims, was entirely appropriate for several reasons.[3]

    First, addressing only the "preliminary or threshold" PAL claims is consistent with prior cases, including the Decision and Order of Judge Perry in *Espaillat v. Foye*, 2012 WL 29092 (N.Y. Sup. January 28, 2021) which Petitioners rely on. (NYSCEF Doc. No. 7.)

    Second, Petitioners' claims under the NYCHRL have been rendered moot by virtue of the temporary restraining order and the Court's continuation of that injunction against the elimination of the Elevator Attendant positions. In accordance with the Court's orders, these positions have not been eliminated. There has been no change in what Petitioners refer to in their Proposed Order as "adequate accommodations … for persons with disabilities, and employees with disabilities, as required by the [NYCHRL]" and, consequently, no possible violation of that law.

    Third, the Court could not reach the merits of the moot NYCHRL claims since the record had not been fully developed related to those claims. To find a violation of the NYCHRL, the Court would have to find that Respondent refused an accommodation to either the public or the individual employee petitioners. *See* NYCHRL §§ 8-107(4)(a), 8-107(15). Respondent is prepared to present evidence which demonstrates it has fulfilled any obligations it has pursuant to the NYCHRL, and submits that the Court may not reach a determination on the NYCHRL

---

[3] As previously noted in Respondent's letter dated July 27, 2023 (NYSCEF Doc. No 27), its representation during oral argument on July 26, 2023 that no further hearing was necessary related to what the Court referred to as the "preliminary or threshold" PAL claims only. From the outset of oral arguments, the Court summarized the issue before it as relating to the PAL claims. (Tr. 6:15-7:6.) Respondent, therefore, centered its arguments on the Court's narrow focus. Additionally, at the conclusion of oral arguments, the Court specifically inquired as to whether a hearing was necessary on the issue of whether the contested change constituted a reduction in service or access; the Court did not inquire as to whether a hearing was necessary on the NYCHRL claims, the standard for which is not the reduction of access. (Tr. 49:1 – 50:13.) Instead, the standard is whether Respondent provided an accommodation enabling access and not every potential accommodation or a particular accommodation. NYCHRL §§ 8-107(15).

Proskauer>

The Honorable Machelle Sweeting
August 3, 2023
Page 3

claims unless and until the record includes such evidence.[4] Specifically, Respondent is prepared to provide information concerning the accessibility it is committed to providing to the public, as the Petition states, "allow persons with disabilities the opportunity to benefit from [Respondent's] subway program." (NYSCEF Doc No. 1, ¶ 54.) By way of example, attached hereto are the Affidavits of Quemuel Arroyo, Chief Accessibility Officer for the Metropolitan Transportation Authority, and Judith Buckley, Assistant Vice President, Deputy Chief Program Executive at MTA Construction & Development,[5] that previews what such evidence would include. Respondent is likewise prepared to present evidence concerning its commitment to accommodate the individual employee Petitioners should they require it; the prior Affidavit of Sheila Hutton previews such evidence. (NYSCEF Doc No. 14.) To hold that not having an Elevator Attendant is a violation of the NYCHRL is inconsistent with ADA guidance, which does not require an operator on an otherwise ADA-compliant elevator.

Fourth, as previewed in Mr. Arroyo's Affidavit and discussed during oral argument (Tr. 21-23), questions of law regarding Respondent's obligations to provide accessibility in subway stations through stair-free means of access such as elevators have been the subject of extensive class action litigation and resolved through settlement. Respondent submits that additional briefing is required regarding the import of resolution of those class action claims to the NYCHRL claims raised in this Petition.

If the Court is now inclined to rule on the merits of the NYCHRL claims, Respondent respectfully requests a hearing and the scheduling of additional written submission to supplement the record specific to these claims.

Respectfully submitted,

*/s/ Steven D. Hurd*
Steven D. Hurd

cc:    Counsel of Record (*via* NYSCEF)

---

[4] Respondent's evidence and argument regarding the accommodations it provides to the public and employees is being offered subject to its position that the NYCHRL is preempted by the PAL.
[5] Mr. Arroyo and Ms. Buckley's Affidavits are attached as Exhibits B and C, respectively.

review of documents, ESI or information (including metadata) for relevance, responsiveness and/or segregation of privileged and/or protected information before production.

10. Notwithstanding the designation of information as "Confidential" in discovery, there is no presumption that such information shall be filed with the Court under seal. A party intending to file with the court a document marked Confidential by the other party shall provide sufficient notice to allow the producing party to seek a protective order.

11. At the conclusion of litigation, Confidential Information and any copies thereof shall be promptly (and in no event later than 30 days after entry of final judgment no longer subject to further appeal) certified as destroyed. This obligation to destroy Confidential Information does not apply to work product created by counsel during the litigation that reflects or is derived from Confidential Information, but such work is product remains subject to the restrictions imposed by Paragraph 3.

12. Nothing herein shall preclude the parties from disclosing material designated to be Confidential Information if otherwise required by law or pursuant to a valid subpoena.

SO STIPULATED AND AGREED.

Dated: Rochester, New York
September 20, 2023

SO ORDERED.

_____
MARK W. PEDERSEN
United States Magistrate Judge

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------------- x

In the Matter of the Application of

ADRIANO ESPAILLAT, individually as a subway rider, ROBERT JACKSON, individually as a subway rider, MANNY DE LOS SANTOS, individually as a subway rider, CARMEN DE LA ROSA, individually as a subway rider, MICHAEL SCHWEISNBERG, individually as a subway rider and as President of the 504 DEMOCRATIC CLUB;

On behalf of classes of subway riders, similarly situated;

And

ROBERT KELLY, Vice President of LOCAL 100 TRANSPORT WORKERS UNION OF GREATER NEW YORK; BRIAN BROOKS; LOURDES BOCHELLI; BRENDA WICKER; and EDITH APONTE;

*Petitioners,*

-against-

NEW YORK CITY TRANSIT AUTHORITY,

*Respondent,*

For an Order Pursuant to Article 78 of the Civil Practice Law and Rules.

-------------------------------------------------------------------- X

**Index No.** 157036/2023 (M. Sweeting)

**AFFIDAVIT OF QUEMUEL ARROYO**

STATE OF NEW YORK    )
                     ) ss.:
COUNTY OF NEW YORK   )

QUEMUEL ARROYO, being duly sworn, states:

1.   I am the Chief Accessibility Officer for the Metropolitan Transportation Authority (the "MTA"), which is the largest transportation agency in North America. I lead and oversee accessibility initiatives, policies, and programming throughout the MTA, including its affiliate

which operates the subway system, New York City Transit Authority ("NYCTA"). The MTA is committed to making all modes of transit accessible for every customer to the maximum extent feasible.

2. I joined the MTA in 2021 as its first Chief Accessibility Officer. Prior to working for MTA, I was interim President and Global Head of Community for Charge, an e-scooter charging and docking company. I previously served as Chief Accessibility Specialist at the New York City Department of Transportation.

3. In 2022, I worked with accessibility advocates in reaching a historic agreement that builds on the MTA's ongoing mission to enhance accessibility throughout the subway system at an accelerated pace. The agreement took the form of a court-approved settlement (the "Settlement Agreement") of a pair of class action lawsuits on behalf of a class of "all people whose disabilities make the use of stairs difficult or impossible and who require stair-free paths of travel in the New York City subway system" challenging the lack of stair-free vertical accessibility in the subway system under the New York City Human Rights Law and federal law. *See Center for Independence of the Disabled, New York, et al. v. Metropolitan Transportation Authority, et al.* No. 153765/2017 (N.Y. Sup. Ct. N.Y. Co.) and *De La Rosa et al. v. Metropolitan Transportation Authority et al.* No. 19-cv-04406 (ER) (S.D.N.Y.).

4. Pursuant to the Settlement Agreement, the MTA committed to making at least 95% of NYCTA subway stations "Accessible Stations" by 2055 (the "Maximum Accessibility Target"). An "Accessible Station" is a subway station that has at least one stair-free path of travel to each platform, and other accessibility features to ensure compliance with the Americans with Disabilities Act (the "ADA"). The goal of obtaining the Maximum Accessibility

Target is to optimize independent access to the subway system universally across all communities, including communities of people with disabilities.

5. To achieve the Maximum Accessibility Target, the MTA has committed to add elevators and/or ramps and other accessibility features to more than 300 subway stations to provide ADA-compliant stair-free paths of travel.

6. Currently, 141 subway stations out of 493 total systemwide are Accessible Stations. The 168th Street Station serving the A and C lines is an Accessible Station. However, the 168th Street 1 line station, as well as the 181st Street (1), 181 St (A), 190th Street (A) and 191st Street (1) Stations are not yet Accessible Stations.

7. As part of the 2020-2024 Capital Plan and preceding Capital Plans, pre-dating the Settlement Agreement, the MTA committed to and is in the process of making 81 stations into Accessible Stations. The Settlement Agreement includes milestones for reaching the Maximum Accessibility Target over the remaining years: 85 additional stations by 2035, an additional 90 by 2045, and an additional 90 by 2055.

8. As part of the Settlement Agreement, the MTA committed to dedicated accessibility project funding at set levels in future capital plans. This funding will be used toward installing ramps and/or elevators and other features that will ensure compliance with the ADA and enhance accessibility for customers with disabilities.

9. The Settlement Agreement does not address or require the staffing of any of the elevators across the subway system with Elevator Attendants or any other employees for purposes of making an elevator ADA-compliant or accommodating disabled riders. Moreover, premising ADA-compliance or accessibility on the presence of an employee contravenes the spirit of the

Settlement Agreement: optimizing *independent* access to the subway system for communities of people with disabilities.

10.  Upon information and belief, there are limited stations in the system where elevators are staffed by an employee: 168th Street (A/C, 1), 181st Street (1), 181st St (A), 190th Street (A), and 191st Street (1), all located in the upper Manhattan neighborhood of Washington Heights. The elevators within these stations are all ADA-compliant.

11.  NYCTA staffs agents and other employees around the clock at every station in the system to monitor the station booth and traverse the station to provide customer assistance to and coordinate emergency response for the public as needed. Station Agents receive significant customer service training, including a module developed by my office on respecting the independence of all riders and providing accessibility assistance upon the request of a rider. Customers can contact NYTCA staff at any time through the use of HelpPoint intercoms placed throughout our stations and intercoms in each elevator cab.

*(intentionally left blank)*

Dated: New York, New York
August 3, 2023

_____
QUEMUEL ARROYO

Sworn to before me on this 3rd day of August, 2023

Mohandai J. Narine
Notary Public, State of New York
Reg. No. 01NA6292701
Qualified in Queens County
Commission Expires 11-4-25

Mohadai J. Narine

FILED: NEW YORK COUNTY CLERK 08/03/2023 06:20 PM                INDEX NO. 157036/2023
NYSCEF DOC. NO. 33                                              RECEIVED NYSCEF: 08/03/2023

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------------------ x

*In the Matter of the Application of*

**ADRIANO ESPAILLAT, individually as a subway rider, ROBERT JACKSON, individually as a subway rider, MANNY DE LOS SANTOS, individually as a subway rider, CARMEN DE LA ROSA, individually as a subway rider, MICHAEL SCHWEISNBERG, individually as a subway rider and as President of the 504 DEMOCRATIC CLUB;**

**On behalf of classes of subway riders, similarly situated;**

And

**ROBERT KELLY, Vice President of LOCAL 100 TRANSPORT WORKERS UNION OF GREATER NEW YORK; BRIAN BROOKS; LOURDES BOCHELLI; BRENDA WICKER; and EDITH APONTE;**

*Petitioners,*

-*against*-

**NEW YORK CITY TRANSIT AUTHORITY,**

*Respondent,*

*For an Order Pursuant to Article 78 of the Civil Practice Law and Rules.*

------------------------------------------------------------------------ X

Index No. 157036/2023 (M. Sweeting)

**AFFIDAVIT OF JUDITH BUCKLEY**

STATE OF NEW YORK    )
                     ) ss.:
COUNTY OF NEW YORK   )

JUDITH BUCKLEY being duly sworn, states:

1. I am the Assistant Vice President, Deputy Program Executive in the Office of ADA Compliance within Fire, ADA and Code Compliance (FACC) at MTA Construction & Development. In this role, I am responsible for ensuring that capital projects, including

installations of elevators in the subway system operated by New York City Transit Authority ("NYCTA"), meet the applicable requirements under the Americans with Disabilities Act ("ADA"). The Office of ADA Compliance reviews all capital projects including drawings and specifications, throughout the stages of construction, from design to post-construction inspections, to ensure that capital projects meet ADA standards. I previously served as Chief ADA and Code Compliance Officer for NYCTA, and prior to that, Deputy Chief ADA Compliance Officer.

2. The elevators in the 168th Street (A/C, 1); 181st Street (1); 181st Street (A); 190th Street (A); and 191st Street (1) stations (the "Washington Heights Stations") have been replaced as part of capital project updates in recent years. The replacements at the 168th Street Station were complete in 2019, 181st Street and 191st Street replacements were complete in 2020, and 190th Street was complete in 2021.

3. All the elevators in the Washington Heights Stations are compliant with applicable ADA standards as set forth in the 2010 ADA Standards for Accessible Design released by the United States Department of Justice on September 15, 2010, also referred to as the ADA Accessibility Guidelines (the "ADAAG"). The ADAAG have been adopted by the United States Department of Transportation ("DOT"), and are applicable to government entities under DOT's purview that provide public transportation services, including NYCTA.

4. In furtherance of the goals of the ADA, the ADAAG seeks to ensure that newly designed or altered public accommodations are readily accessible to and usable by individuals with disabilities.

5. In compliance with the ADAAG, the parts necessary for customers to use the elevators in the Washington Heights Stations including all buttons, have the requisite clear floor space and

are at the prescribed height range from the floor. Additionally, buttons and any other user controls meet the ADAAG dexterity-related requirements: they are operable with one hand; do not require tight grasping, pinching, or twisting of the wrist; and the force required to operate is 5 pounds or less.

6. In addition, ADAAG requires, and the Washington Heights Stations' elevators have, the following accessible elements: emergency control buttons, audible signals, braille lettering next to the call buttons and emergency controls, open door durations sufficient for riders to enter and exit, and an emergency communication system.

7. The ADAAG does not require that elevators be staffed with an attendant. In fact, requiring an attendant would be inconsistent with ADAAG's goal of ensuring that, whenever possible, disabled users can independently operate transportation elements just as non-disabled users do.

8. The elevators in the Washington Heights Stations were inspected at the time of their installation to ensure compliance with ADAAG standards.

*(intentionally left blank)*

Dated: New York, New York
August 3, 2023

_____
JUDITH BUCKLEY

Sworn to before me on this 3rd day of August, 2023

KATHLEEN COLON DELTORO
Notary Public State of New York
No.01CO6396721
Qualified in Kings County
Commission Expires Aug 26, 2023